UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARA L. MALDONADO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,[1]<br><br>Defendant. | **1:16-cv-187 GSA**<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF TARA L. MALDONADO** |

**I.    INTRODUCTION**

Plaintiff,, Tara Maldonado ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act.  The matter

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 16, 19, and 20). Upon a review of the entire record, the Court finds that the ALJ applied the proper standards and the decision is supported by substantial evidence. Accordingly, the Court affirms the agency's disability determination and denies Plaintiff's appeal.

## II. FACTS AND PRIOR PROCEEDINGS[3]

### A. Background

Plaintiff filed an application for DIB under Title II of the Act on March 22, 2012, alleging an onset of disability due to congestive heart failure beginning April 11, 2011. AR 28; 191-194; 206. The agency denied Plaintiff's application initially and on reconsideration. AR 28; 134-137; 140-144. On June 10, 2014, after holding an administrative hearing on May 5, 2014 (AR 58-111), Administrative Law Judge ("ALJ") Gail Reich issued a decision denying the application. AR 28-38. The Appeals Council upheld that decision on December 16, 2015 (AR 1-6), making that decision the final decision of the Commissioner. Plaintiff sought judicial review by commencing the instant action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Summary of the Medical Record

The Court has reviewed the entire medical record and will be referenced where appropriate. AR 307-1199.

#### 1. *Treatment Records*

In 2007, Plaintiff was diagnosed with cardiomyopathy and received an implantable cardioverter defibrillator (ICD). AR 32; 332. She also underwent a mitral valve repair in 2009 AR 32, 329. In 2010, while Plaintiff was pregnant with twins, clinicians noted her cardiac function had improved and her ejection fraction (EF) was 52%. AR 32; 329.[4] She sought treatment for palpitations during her pregnancy and for shortness of breath after giving birth at the end of 2010. AR 32; 358-360; 418-421; 438-446.

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 4 and 6).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[4] EF, which is expressed as a percentage, refers to the amount of blood being pumped out of the left ventricle each time it contracts; 55% or more is considered normal and 50% is considered reduced. Experts vary in their opinions about an ejection fraction between 50% and 55%, and some would consider this a "borderline range." *See*, http://www.mayoclinic.org/ejection-fraction/experts-answers/FAQ-20058286. (last visited June 7, 2017).

On examination in January 2011, she denied shortness of breath or chest pains and stated she was feeling better. AR 32; 582-583. She presented to the emergency room with chest pain in February 2011, but one week later she indicated that she felt good, had more energy, and had returned to her job at the credit union. AR 582-583.

In March and April 2011, Plaintiff complained of chest pain and palpitations and clinicians modified her medications for better blood pressure control. AR 33; 583. In May 2011, Plaintiff reported feeling fairly well and it was noted that she had labored breathing when she carried the twins, who weighed around forty pounds, but she denied shortness of breath when performing activities of daily living or walking, including walks with a stroller. AR 33; 583.

In July 2011, when Plaintiff was hospitalized for repair of an ICD lead, clinicians noted she was clinically stable and denied chest pain, shortness of breath, or palpitations, and she was "otherwise asymptomatic." AR 33; 514. In September 2011, Plaintiff presented with an irregular heartbeat but had no chest pain, dizziness, weakness, or shortness of breath. AR 33; 857. An echocardiogram showed mild left ventricular enlargement with adequate systolic function and normal right ventricular size and function; Plaintiff's EF was 45% and her BNP[5] was normal, consistent with a compensated state.[6] AR 33; 863; 873; 1090.

In December 2011, Plaintiff presented to the emergency room complaining of palpitations; she denied chest pain or shortness of breath and her physical examination yielded unremarkable results, including normal respiration and cardiovascular findings. AR 34; 887-889.

In January 2012, Plaintiff presented to the emergency room complaining of chest pain. Her EKG showed no acute findings, her cardiac function was stable, and her echocardiogram showed no ischemia (insufficient blood supply). AR 1147. A few days later, clinicians modified Plaintiff's medication, which reduced her palpitations, and she was reportedly asymptomatic and hemodynamically stable. AR 34; 955-956. A January 2012 chest x-ray showed stable mild cardiomegaly (enlargement) and no evidence of congestive heart failure. AR 33, 1153.

---

[5] BNP, or B-type natriuretic peptide, is a blood test to diagnose and assess congestive heart failure. *See* http://my.clevelandclinic.org/health/articles/b-type-natriuretic-peptide-bnp-bloodtest (last visited June 7, 2017).

[6] A "compensated" state means heart symptoms are stable and there is no fluid retention or pulmonary edema. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1117602/ (last visited June 7, 2017).

In March 2012, her doctor adjusted Plaintiff's medication to address difficulties sleeping due to skipped heartbeats and a tendency for bradycardia (slow heartbeats), but she was again noted to be hemodynamically stable with "very well controlled" blood pressure. AR 33; 962. She also reported feeling better with fewer palpitations. AR 33; 963.

In May 2012, an echocardiogram showed mildly depressed left ventricular systolic function with an EF of 45%, and normal right ventricular size and function. A mitral annuloplasty ring was present with mild mitral valve regurgitation. AR 33; 1155. In June 2012, Plaintiff stated she felt palpitations at times and "mild" shortness of breath but was doing "pretty well;" a clinician noted moderate mitral valve stenosis on Plaintiff's echocardiogram but her cardiovascular examination and all other systems were normal. AR 34; 1142-1143.

In October 2012, Plaintiff presented to the emergency room with chest pain complaints. On examination, clinicians reported unremarkable findings including, among other things, no shortness of breath, no respiratory distress, and normal cardiovascular findings. AR 1003-1004. Imaging studies revealed no evidence of deep venous thrombosis, pulmonary embolism, or active cardiopulmonary disease. AR 33; 1005-1006; 1014-1017. February 2013 lab results showed Plaintiff's BNP was 101. AR 77;1139.[7] In a May 2013 examination, clinicians reported Plaintiff was in no distress and documented normal findings for all systems, including her heart AR 35; 1138.

2. *Medical Opinions*

a. *State Agency Medical Physicians*

Dr. Leah Holly, D.O., completed a Physical Residual Functional Capacity Assessment on July 10, 2011. AR 34; 645-650. Dr. Holly opined Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently; she could stand or walk for two hours and sit for six hours in an eight-hour workday; she had no limits on pushing or pulling; she could never climb ladders, ropes or scaffolds but could occasionally climb ramps or stairs; she could frequently stoop and occasionally balance, kneel, crouch, or crawl; she had no manipulative limitations; and she should avoid exposure to fumes, odors, dusts, gases, and poor ventilation as well as hazards such as machinery or heights. AR 646-648.

---

[7] A BNP level of < 100 means heart failure is unlikely, and > 400 means heart failure is likely. *See* http://emedicine.medscape.com/article/2087425-overview (last visited June 7, 2017).

In a Physical Residual Functional Capacity Assessment dated August 8, 2012, Dr. B. Vaghaiwalla, M.D., opined Plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently; she could stand or walk for three hours and sit for six hours in an eight-hour workday; she had no limits on pushing or pulling; she could never climb ladders, ropes or scaffolds but could occasionally climb ramps or stairs; she could occasionally balance, stoop, kneel, crouch, or crawl; and she had no manipulative or environmental limitations. AR 119-120.

In a January 29, 2013 Physical Residual Functional Capacity Assessment, Dr. M. Sohn, M.D., opined Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently; she could stand or walk for two hours and sit for six hours in an eight-hour workday; she had no limits on pushing or pulling; she could occasionally climb ladders, ropes, scaffolds, ramps or stairs; she could occasionally balance, stoop, kneel, crouch, or crawl; and she had no manipulative or environmental limitations. AR 129-131.

### b. *Dr. Venkat Warren, M.D., Consultative Examiner*

Dr. Venkat Warren, M.D., performed a consultative cardiology evaluation on July 26, 2012. AR 33, 1120-25. Dr. Warren noted Plaintiff's medical history included pulmonary hypertension, chest pains, EF in the 40-48% range, and an ICD implant in 2007, which was working normally aside from a problem with a lead in 2011. AR 1122. Dr. Warren documented Plaintiff's self-reported complaints of palpitations, dizziness, and shortness of breath when walking. AR 1120. On examination, however, the doctor observed Plaintiff was in no acute distress; she had no shortness of breath when walking; and there was no cyanosis or edema in her extremities. AR 1123.

Dr. Warren found Plaintiff was "compensated with no signs of acute cardiac arrhythmias or congestive heart failure." AR 33, 1124. Based on her history, however, the doctor asserted Plaintiff was disabled. AR 34, 1124. He also opined that Plaintiff could not lift or carry heavy objects; she could sit, stand, and walk at a mild pace; she had no problems with her hands, feet, hearing, or vision; she could not balance, stoop, kneel, crawl, crouch, or climb stairs or ladders; and she would have significant difficulty with unprotected heights, moving machinery, and humid and dusty environments. AR 34, 1124.

### c. *Dr. Ernest Schwarz, M.D., Treating Physician*

Plaintiff's treating physician, Ernest Schwarz, M.D., completed a Physical Residual

Functional Capacity Questionnaire on March 28, 2014. AR 35, 1195-99. Dr. Schwarz opined Plaintiff could sit for forty-five minutes and stand for fifteen minutes at one time; she could sit for less than two hours and stand or walk for less than 2 hours in an eight-hour workday; her symptoms would frequently interfere with her attention and concentration; she would need unscheduled breaks; she would need to elevate her legs; she could lift or carry less than ten pounds occasionally; she could use her hands for grasping, fine manipulations, and reaching for only 5% of the time; she could not bend or twist at the waist; and she would be absent from work more than three times per month. AR 1196-1199.

*d. Dr. Hugh Savage, M.D., Expert Witness*

Medical expert Dr. Hugh Savage, M.D., testified at the hearing on May 5, 2014. AR 35-36; 67-87. He stated Plaintiff had some functional limitations due to her impairments and should be limited to sedentary work. AR 68. He opined that she could lift or carry up to twenty pounds occasionally and ten pounds frequently; she could sit for six out of eight hours; she could stand for four out of eight hours but would require a five minute break every hour, during which she could remain on task; she could walk for three out of eight hours but would require a five minute break every hour, during which she could remain on task; she had no manipulative limitations with the exception of overhead reaching, which should be limited to three pounds occasionally; she had no limitations on reaching, handling, fingering, feeling, pushing, or pulling other than the lifting/carrying limitation; she could never climb ladders, ropes, or scaffolds; she could frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; and she should avoid concentrated exposure to unprotected heights, moving mechanical parts, temperature extremes, and pulmonary irritants such as dust or fumes. AR 35; 68-70. Dr. Savage did not think Plaintiff would be limited in performing activities such as cooking, preparing meals, taking public transportation, walking a block, shopping, or handling paper files, and she could frequently drive a car. AR 35; 69-70.

Dr. Savage testified that Plaintiff's records showed "things are moving in a positive way" for her impairments. AR 77. He pointed out that Plaintiff's BNP was normal in 2011 and 2013, which is "extremely good in terms of a prognosis" AR 77, citing Ex. 10F (AR 1090) and Ex. 12F (AR 1139). Dr. Savage explained that BNP was an important measure of heart functioning, and normal BNP indicated good compensation. AR 77. He further explained that in Plaintiff's

case, her BNP persisted at a level suggesting she had good compensation; he thought she could potentially do light work but recommended sedentary work under a "worst case" scenario. AR 77-78.

Citing Plaintiff's examination results and other record evidence, Dr. Savage did not agree with Dr. Schwartz's opinion or that Plaintiff's condition met the criteria of New York Heart Association (NYHA) class III.[8] AR 35-36; 78-80; 85-86. Dr. Savage explained that the limitations in Dr. Schwartz's opinion were unsupported and inconsistent with the objective evidence, including records showing Plaintiff's BNP was normal, she was not out of breath, she was comfortable during examinations, she presented as asymptomatic, and her EF was good. AR 80-81. Dr. Savage indicated that in the worst case, Plaintiff's symptoms could be considered NYHA class II, which was consistent with slight limitation on physical activity, comfortable at rest, but no shortness of breath on examination, as was the case here. AR 36; 79-80. Dr. Savage did not agree that Plaintiff would miss more than two days of work per month because she had multiple support mechanisms for her heart condition, including an ICD that controlled her heart rate if it dropped, supportive care from her doctor, and beta blockers. AR 83-84.

### C. Plaintiff's Testimony

Plaintiff appeared and was represented by counsel at a hearing on May 5, 2014. AR 56-111. At the time of the hearing, she was 35 years old, had a high school education, and lived with her husband and her twins who were three years old. AR 60-61. Plaintiff testified that she last worked as a fraud investigator for a credit union in April 2011. AR 60. She stated that her doctor thought she should stop working in April 2011 because her blood pressure was high and she was having shortness of breath. AR 61. She stopped working at the time because being in a stressful environment seemed to make her symptoms worse. AR 61; 89.

Plaintiff's husband worked full-time. She spent five months at home with her children and went back to work. After a couple of months, she stopped working due to health issues. AR 62. She currently stays at home with the children with help from her mother and other family

---

[8] The New York Heart Association (NYHA) classification system places patients in categories based upon their physical limitations from their heart conditions. NYHA class II reflects slight limitation of physical activity, comfortable at rest, and fatigue and shortness of breath with physical activity; NYHA class III reflects fatigue and shortness of breath at rest. AR 36, 79-80. *See* http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure (last visited June 7, 2017).

members including her father-in-law who lives with her. AR 63; 90; 92. Plaintiff stated that she could fix light meals, drive a car, go grocery shopping with help, gets both children into the car with help, and does light housework. AR 63-64; 93. She testified that she was able to carry the children since they were born and weighed about five pounds until they were six months and their weight had doubled. AR 87-88. Plaintiff further testified that she would take the children out alone to the store and the bank until they were around a year old. AR 91-92. Before that time she needed help putting them in the car so a family member would help her. AR 91.

On further questioning from her attorney, Plaintiff stated that there was usually someone at the house with her and she did not take the twins out alone on a regular basis because her heart rate can spike and when that occurs she experiences tunnel vision, and she gets dizzy. AR 91- 92. She noted that she experiences shortness of breath, chest pain and pressure, and dizziness when her pacemaker is not working properly and she is unable to just go in and get it adjusted. AR 90. Plaintiff also noted that that her symptoms worsened with her menstrual cycle, and she needed to have someone come assist her at least four days per month. AR 93-94.

In response to questions from the medical expert, Plaintiff testified that her doctor repaired her mitral valve but decided against replacing it. She indicated that the doctor was monitoring her symptoms and managing her medications while he determined if she would be a transplant candidate. AR 64-65. Plaintiff also asserted that she had fatigue since 2007 but it was worsening, especially after having the children. AR 66-67.

### III. THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

## IV. **SUMMARY OF THE ALJ'S DECISION**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was insured through December 31, 2016, and that Plaintiff had not engaged in substantial gainful activity since April 11, 2011, the alleged date of onset. AR 30. Further, the ALJ identified the following severe impairments: non-ischemic cardiomyopathy; paroxysmal atrial fibrillation status post ICD implantation; and mitral valve regurgitation and mitral valve stenosis. AR 30. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 30. As part of her analysis, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms were not entirely credible.

The ALJ also determined that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of sedentary work as defined in 20 CFR § 404.1567(a). Specifically, the ALJ found Plaintiff can lift/carry up to ten pounds frequently and less than ten pounds occasionally; she can sit for six out of eight hours; she can stand for a total of four out of eight hours, but only one hour at a time; she can walk for a total of three out of eight hours, but only one hour at a time; she needs to sit for five minutes every hour, during which she can remain on

task; pushing/pulling and manipulative activities are only limited by the lifting/carrying restrictions, except for overhead reaching, for which she is limited to three pounds occasionally; she can never climb ladders, ropes or scaffolds; she can have no exposure to unprotected hazards; she can frequently perform all other postural activities; and she must avoid concentrated exposure to unprotected heights, moving mechanical parts, temperature extremes, and pulmonary irritants (dust, fumes, etc.). AR 31.

At step four, the ALJ found Plaintiff could perform her past relevant work as a fraud investigator and as a receptionist. AR 36. Alternatively, at step five, the ALJ also concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and RFC, including telephone solicitor, information clerk, and dispatcher. AR 37. The ALJ therefore concluded Plaintiff was not disabled.

## V. THE ISSUES PRESENTED

Plaintiff argues that that ALJ improperly evaluated the medical evidence when assessing her RFC. Specifically, she contends that the ALJ failed to give specific and legitimate reasons for rejecting Dr. Schwarz, Plaintiff's treating physician, and instead erroneously gave greater weight to Dr. Savage's opinion, who testified at the hearing. (Doc. 16, pgs. 7-16; Doc. 20, pgs. 3-9). She also contends that the ALJ erred in her credibility determination. (Doc. 16, pgs. 7-16; Doc. 20, pgs. 3-9). The Commissioner contends that the ALJ properly evaluated the medical evidence when assessing Plaintiff's RFC and that the ALJ's credibility evaluation was proper and supported by substantial evidence. (Doc. 19, pgs. 9-27).

## VI. THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one

of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VII. DISCUSSION

### A. The ALJ's Evaluation of the Medical Evidence was Proper.

Plaintiff argues that that ALJ improperly evaluated the medical evidence when assessing her RFC. Specifically, she contends that contrary to the ALJ's findings, Dr. Schwarz's opinions are consistent with the record. She also asserts that Dr. Warren's opinion (the consultative doctor) supports Dr. Schwarz's limitations. Moreover, if the ALJ had concerns about Dr. Schwarz's opinion, the ALJ should have contacted the doctor for clarification. Instead, the ALJ erroneously relied on Dr. Savage's (the medical expert's) opinion which was improper; Dr. Savage only offered a difference of opinion which does not constitute substantial evidence. (Doc. 16, pgs. 7-16; Doc. 20, pgs. 3-9). The Commissioner contends that the ALJ properly evaluated the medical evidence and the RFC is supported by substantial evidence. (Doc. 19, pgs. 9-27).

#### *1. Legal Standard*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, "the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. CSS*, 169 F.3d 595, 600 (9th Cir. 1999). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992).

When doing so, an ALJ may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Ghanim v. Colvin*, 763 F. 3d 1154, 1161 (9th Cir. 2014); *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Ghanim*, 763 F. 3d at 1161; *Lester*, 81 F.3d at 830. While a treating physician's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the opinion of the non-treating source may itself be substantial evidence; it is then solely within the province of the ALJ to resolve the conflict.

11

*Andrews v. Shalala*, 53 F. 3d 1035, 1041 (9th Cir. 1995). Where, on the other hand, a non-treating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Id*; *See also*, *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989); See *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir.1993) (applying test where ALJ relied on contradictory opinion of nonexamining medical advisor). Similarly, the opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*, 278 F. 3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Leste*r, 81 F.3d at 831, *citing Magallanes*, 881 F.2d at 751–55.

Here, when evaluating the medical evidence, the ALJ gave great weight to Dr. Savage's opinion (the expert witness) and three other state agency doctors' opinions, and rejected Dr. Warren's (the consultative doctor) opinion in part. The ALJ also gave Dr. Schwarz's (Plaintiff's treating physician) opinion little weight. Because there were contradictory medical opinions, the ALJ needed to state specific and legitimate reasons for rejecting Dr. Schwarz and Warren's findings. *Ghanim*, 763 at 1161; *Lester*, 81 F.3d at 830. A review of the record indicates that the ALJ did so in this case.

### a. The ALJ's Rejection of Dr. Schwarz and Dr. Warren's Opinions are Supported by Substantial Evidence.

The ALJ summarized Dr. Schwarz's opinion which was completed on March 28, 2014. AR 35-36; 1195-1199. She rejected the opinion because the doctor's findings that Plaintiff could only stand for fifteen minutes at a time, sit for less than two hours per day, and lift less than ten pounds were extreme and implausible given Plaintiff's ability to perform various daily activities. In doing so, the ALJ noted that Plaintiff acknowledged that she spent a typical day doing light housework and caring for her two toddler twins albeit with assistance, including lifting and carrying her twins when they weighed more than ten pounds. AR 34; 87-88. The ALJ also noted that Plaintiff acknowledged that she was able to put her children in the car with assistance,

prepare light meals, and go to the grocery store. AR 34; 63-64; 87-88; 93; 219-220. The ALJ noted that these activities were also inconsistent with Dr. Schwarz's limitation that she could never bend or twist at the waist, and that she would be unable to use her hands except rarely (5% of an eight hour day). AR 1198. Reliance on these facts is proper because a claimant's daily activities can constitute a reason to discredit a physician's opinion of the claimant's limitations. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (conflict between medical opinion and daily activities "may justify rejecting a treating provider's opinion"); *See also, Rollins v. Massanari*, 261 F. 3d 853, 856 (9th Cir. 2001) (ALJ properly discounted treating doctor's opinion for being "so extreme as to be implausible" where there was no indication in the record for the basis of the restrictions and the limitations were inconsistent with Plaintiff's level of activity).

The ALJ also noted Dr. Schwarz's findings were at odds with other medical professionals' opinions in the record including three state agency non-examining doctors (Drs. Holly AR 645-650; Dr. Vaghaiwall AR 119-120; and Dr. Sohn AR 129-131) who all concluded in 2011, 2012, and 2013, that Plaintiff would be able to perform a range of sedentary to light work on a continuing and regular basis. AR 34. The ALJ also gave great weight to Dr. Savage's opinion, who testified as an expert at the hearing, noting that he was a board certified specialist in cardiovascular disease, as well as a specialist in the field of social security and disability. AR 35-36. The ALJ noted that Dr. Savage had the benefit of reviewing the entire medical record and that his explanations were the most consistent with the record including Plaintiff's level of activity. AR 35-36. In doing so, the ALJ noted that Dr. Savage gave specific reasons for disagreeing with Dr. Schwarz's opinion including that Plaintiff had improved and showed "excellent compensation," that she had a good ejection fraction, no evidence of ischemia and normal valve gradient, which is supported by the record. AR 35; 64-70; 77-87.

The ALJ also noted that many of the limitations Dr. Warren (the consultative physician) identified were largely consistent with the RFC including that Plaintiff was unable to lift heavy objects, but that she was capable of sitting, standing and walking at a mild pace. AR 34. Notwithstanding the above, the ALJ's rejected Dr. Warren's ultimate conclusion that Plaintiff was disabled. AR 34. This finding is supported by substantial evidence because the ALJ found that the doctor's examination which revealed no shortness of breath and no sign of acute arrhythmias or congestive heart failure was inconsistent with his disability determination. AR 33-

13

34; 1123-1124. Inconsistencies with the overall record or with a physician's own notes are both specific and legitimate reasons to reject a physician's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician opinion where physician's "other recorded observations and opinions" contradicted his ultimate conclusions); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (physician's finding of "marked limitations" legitimately rejected where "no substantial evidence existed demonstrating [plaintiff's] mental impairments prevented him from working"). The ALJ also properly noted that a disability determination is not a medical opinion but rather an administrative finding reserved to the Commissioner. See 20 C.F.R. § 404.1527(d); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability").

In light of the above, Dr. Savage, the other state agency doctors' and Dr. Warren's assessment in part, formed a valid basis to reject Dr. Schwarz's opinions. Although Plaintiff has argued that Dr. Savage's difference of opinion does not establish substantial evidence, an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Morgan*, 169 F.3d at 602 (inconsistency between two doctors' conclusions regarding claimant's mental functioning "provided the ALJ additional justification for rejecting" one of the conclusions). The ALJ further buttressed the rejection of Dr. Schwarz's opinion by noting that the doctor's conclusions were at odds with his own recent clinical findings in May 2013 which indicated that Plaintiff was functioning within normal limits and she was demonstrating no distress. AR 35; 1138-1139.

Plaintiff's argues that her NYHA Classification is II and that she experienced symptoms including chest pain, shortness of breath, palpitations, ventricular tachycardia ("VT")[9] and supraventricular tachycardia ("SVT").[10] She also notes that in May 2011, she reported 3-4 pillow orthopnea,[11] in July 2011 she reported decreased exercise tolerance, and in January and May

---

[9] VT is a rapid heart rate that starts in the lower chambers of the heart of more than 100 beats per minute with a least three irregular heartbeats in a row. https://medlineplus.gov/ency/article/00187.htm (last visited June 7, 2017).
[10] SVT is a rapid heartbeat of at least 100 beats to 300 beats per minute. http://webmd.com/heart-disease/tc/supraventricular-tachycardia-overview#1. (last visited June 7, 2017).
[11] Orthopnea is shortness of breath when a person lies down. The severity of the symptom usually depends on how flat a person is lying – the flatter an individual lies down, the more shortness of breath is experienced. To gauge the

2012, her ejection fraction was 40%. (Doc. 16, pg. 9; Doc. 20, pgs. 3-4). While Plaintiff's citations to the record are for the most part accurate (A.R. 333; 362; 415; 418; 438; 443; 446; 616; 665; 835; 857; 887; 904; 968; 1003; 1034; 1129; 1131; 1135; 1140; 1188; 1190; 1193), the ALJ stated that overall, Plaintiff's condition has improved noting that Plaintiff has been in a compensated state, including that her BNP was normal, and subsequent objective testing including her blood pressure, a chest x-ray, and echocardiogram revealed her condition had stabilized. AR 33; 35; 863-865; 962-963; 1017; 1153; 1155; 1090. Moreover, Plaintiff failed to establish that these symptoms would cause her to be so incapacitated that she would be precluded from all work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling").

Finally, at the conclusion of the evaluation of the medical evidence, the ALJ made it clear that she considered the entire medical record as a whole including Plaintiff's subjective statements, and crafted a RFC that incorporated the limitations she found best comported with the weight of the evidence. AR 36; *See* 20 C.F.R. § 416.946(c); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Given all of the above, the ALJ provided specific, legitimate reasons for rejecting Dr. Schwarz's opinion and adopting Dr. Warren's decision only in part, and relying on the other state agency physicians' opinions.

### b. The ALJ Was Not Required to Further Develop the Record.

Plaintiff argues that the ALJ should have re-contacted Dr. Schwarz if she had any concerns regarding his opinion. (Doc. 16, pg. 9). However, it is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). An ALJ is required to re-contact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. 20 C.F.R. §§ 404.1512(e); *Bayliss*, 427 F.3d at 1217; *Tonapetyan v. Halter*, 242 F.3d at 1150 (holding that ALJs have a duty fully and fairly to develop the record only when the evidence is ambiguous or "the record is

---

severity of this symptom, doctors often ask patients how many pillows they need to lie on to avoid feeling short of breath in bed. http://www.webmd.com/heart-disease/heart-failure/tc/heart failure-symptoms-topic-over (last visited June 7, 2017).

inadequate" to allow for proper evaluation of the evidence). That is not the case here as Plaintiff has not identified any inadequacies or ambiguities in the medical evidence. Rather, she disagrees with the ALJ's evaluation of the opinion evidence. The ALJ's duty is to resolve conflicts in the medical opinions, and she did so by giving less weight to Dr. Schwarz's opinion because she believed it was unsupported and inconsistent with the record as a whole. *See Andrews*, 53 F.3d at 1041 (where medical opinions differ, "it is then solely the province of the ALJ to resolve the conflict") (citation omitted). Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005).

**B. The ALJ Properly Discredited Plaintiff's Subjective Complaints.**

Plaintiff argues that the ALJ's credibility determination was improper because the ALJ did not provide clear and convincing reasons to reject her testimony. (Doc. 16, pgs. 11-16; Doc. 20, pgs. 5-10). The Commissioner contends that the ALJ's credibility determination was proper and the decision is supported by substantial evidence. (Doc.14, pgs. 11-14).

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.*; *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").[12] Factors an ALJ may consider include: 1) the

---

[12] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935 (March 16, 2016) and 2016 WL 1131509 (March 24, 2016). In Ruling 16-3p, the SSA stated it would no longer use the term credibility when evaluating the intensity, persistence and limiting effects of a claimant's symptoms. 2016 WL 1020935, at *14167. It is unclear whether this new rule applies to cases completed prior to the March 28, 2016 effective date. Currently, only the Seventh Circuit has issued a published opinion, applying Ruling 16-3p retroactively. *See, Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016). But even if the Court were to apply Ruling 16-3p

16

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas v. Barnhart*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), *see also* 20 C.F.R. § 404.1529(c).

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown –Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

Plaintiff alleged that she was unable to work due to her heart condition. When discrediting Plaintiff's credibility with regard to this condition, the ALJ noted the objective medical evidence as previously outlined in this decision did not support the Plaintiff's testimony which is a permissible basis to find her not credible. AR 32-34; 1005-1006; 1014-1017. See 20 C.F.R.§ 404.1529(c)(2) ("Objective medical evidence … is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms …."); *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"). Specifically, the ALJ noted that Plaintiff's physical condition was compromised, however, overall her condition had improved and was under control after she underwent defibrillator placement and a mitral valve repair. AR 32-34; 329; 514; 582-583; 962-963; 1090; *Warre v. Com'r of Soc. Sec*., 439 F. 3d

---

retroactively, the ALJ's symptom evaluation remains unchanged. Ruling 16-3p changes are not substantive as it relates to this case. *See*, *Mendenhall v. Colvin*, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) (No. 3:14-CV-3389) ("SSR 96-7p and SSR 16-3p are substantially similar. Rule 16-3p affects only the second step of the method by which symptoms are evaluated.)

17

1001, 1005 (9th Cir. 2006) (impairment amenable to control is not disabling).

The ALJ also referenced inconsistencies between Plaintiff's subjective complaints and the medical record. For example, the ALJ noted Plaintiff asserted she experienced "extreme" shortness of breath that left her unable to do housework, carry more than her purse and a bottle of water, or walk more than the length of the house. AR 33-34; 217-221. However, in May 2011, after the alleged date of disability, Plaintiff denied shortness of breath when performing activities of daily living or walking, including twenty minute walks pushing a stroller, but rather only experienced shortness of breath with strenuous exertion such as carrying her twins. AR 33-34; 583. Furthermore, the ALJ noted that when Plaintiff experienced some irregular heartbeats were not associated with exertion but occurred when she was at rest. AR 34; 887. Moreover, in July 2011 after a defibulator malfunction, clinicians noted Plaintiff was "asymptomatic" and clinically stable without chest pain, shortness of breath, or palpitations. AR 33; 514. The ALJ also noted that by January 2012, it was noted that Plaintiff was "relatively asymptomatic" and hemodynamically stable after her medications were adjusted. AR 34; 956-957.

Finally, the ALJ found that Plaintiff had engaged in activities that were inconsistent with her allegations of disabling symptoms which as previously outlined included caring for her three year old twins with assistance, preparing light meals, driving, going to the grocery store, and completing light housework with help. AR 34; 63-64; 93. This included carrying her children until they were six months old, including when their weight doubled. AR 92. The ALJ noted that these activities are demanding physically and mentally which undermined Plaintiff's credibility. AR 34; *Rollins*, 261 F.3d at 857 ("The ALJ also pointed out ways in which [the claimant's] claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week").

Plaintiff argues that these activities cannot support an adverse credibility determination unless the ALJ makes specific findings about the transferability of the activities to a work setting. (Doc. 16, pgs. 14-16). However, an ALJ can properly discount a claimant's credibility when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability alleged. *Molina v. CSS*, 674 F. 3d 1104, 1112-1113 (9th Cir. 2012). Thus, these are clear and convincing reasons to reject Plaintiff's testimony. *See Thomas v. Barnhart*, 278 F. 3d at

958-959 (ALJ can consider inconsistency between testimony and conduct); *see also* 20 C.F.R. § 416.1529(c) (An ALJ can consider inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct, as well as the claimant's daily activities); *See also*, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ may consider activities of daily living in credibility determination).

Plaintiff also cites Rule 613 of the Federal Rules of Evidence ("FRE") and *Soto-Olarte v. Holder*, 555 F. 3d 1089 (9th Cir. 2009) for the premise that the ALJ was required to confront the Plaintiff with theses inconsistencies and give her an opportunity to explain them. (Doc. 16, pgs. 13; Doc. 20, pgs. 5-6). However, the reliance on *Soto-Olarte* is misplaced as it is an immigration case, and social security law does not impose a confrontation requirement, nor do the Federal Rules of Evidence apply in social security hearings. *Bayliss*, 427 F.3d at 1218 n. 4. This proposition has been upheld in numerous district courts in the Ninth Circuit that have addressed this issue. *See*, *Milosevich v. Colvin*, 2016 WL 738420, at *4 (C.D. Cal. Feb. 23, 2016) citing *Mulay v. Colvin*, 2015 WL 1823261, at *6 (C.D. Cal. Apr. 22, 2015) (court rejected the claimant's argument that the ALJ had a duty to seek an explanation for inconsistencies in the record); *see also Amezquita v. Colvin*, 2016 WL 1715163, at *7-8 n. 4 (C.D. Cal. Apr. 28, 2016) (rejecting argument, based on *Soto-Olarte*, that the ALJ had a duty to confront the claimant with inconsistencies in his testimony); *Kocher v. Colvin*, 2015 WL 6956529, at *8 (D. Nev. Sept. 29, 2015); (same) *Montelongo v. Colvin*, 2014 WL 4627245, at *10 (E.D. Cal. Sept. 16, 2014) (same, noting "[a]lthough immigration law is administrative law, it does not apply here").

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834. Although the Plaintiff has offered other interpretations of the evidence regarding her credibility, it is not the role of the Court to re-determine Plaintiff's credibility *de novo*. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Accordingly, the ALJ's credibility determination was proper.

**VIII. <u>CONCLUSION</u>**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

evidence and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal. The Clerk of this Court is DIRECTED to enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security and against Tara Maldonado, and close this action.

IT IS SO ORDERED.

    Dated:   **June 8, 2017**               **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE